STATE, Plaintiff, v. DEKEYSER, Defendant.
LUCKENBACH, Appellant, v. SHAWANO COUNTY, Respondent.

*November 3—November 30, 1965.*

For the appellant there was a brief and oral argument by *Orville S. Luckenbach* of Shawano, *pro se*.

For the respondent there was a brief and oral argument by *Lloyd G. Andrews,* district attorney of Shawano county.

HALLOWS, J.   The itemized bill submitted is as follows:

"Statement of Attorney Fees based upon schedule of State Bar Minimum fees.

| | |
|---|---:|
| Appearance in Court and plea; consent to order for Central State Hospital.......... $ | 75.00 |
| 1 day at Green Bay to place of employment; interviewing Foreman at his home; Tavern keeper and one other place, other individuals—3 subpoenaed ................... | 75.00 |
| 90 miles @ .08........................... | 7.20 |
| 1 day at Seymour, visiting places defendant had been, interviewing Parish Priest and others as prospective witnesses.......... | 75.00 |
| 75 miles @ .08 ........................ | 6.00 |
| ½ day at Seymour, primarily to interview two witnesses not available the day previous. Of those interviewed; two subpoenaed....... | 37.50 |
| 70 miles @ .08........................ | 5.60 |
| 40 hours to briefing and preparation for trial at $20.00 per hour ..................... | 800.00 |
| 4 days of trial, at $200.00 per day.......... | 800.00 |
| Miscellaneous expenses as phone calls; letters and appearances for sentencing.......... | no charge |
| Total ............................... | $1,881.30" |

Apparently no hearing was held or testimony taken to determine the extent, necessity, or details of the services.   Perhaps the trial judge thought a hearing was unnecessary as the trial was conducted before him.

In the order appealed from, however, the court stated there appeared to be a misunderstanding that the county paid State Bar minimum fees.  The order further stated Shawano county attorneys were rendering adequate and efficient service to indigents whether or not they received compensation comparable to private practice and that the

court had been allowing for defense of indigents $40 to $50 for a half day in court, or less, and $75 per day for preparation and $100 per day for trial work. On this basis, the court modified and allowed the statement as follows:

"Appearance in court and plea; Consent to
Order for State Hospital ................ $ 40.00
One day interviewing witnesses............. 75.00
90 miles travel ........................... 6.30
Half day to interview two witnesses not available on the previous day ................ 40.00
Mileage, 70 miles ......................... 4.90
5 days preparation ........................ 375.00
3 full days for trial at $100 per day.......... 300.00
Half day appearance for sentencing and so forth ................................. 40.00

Total approved .......................... $881.20"

One day's trip to interview witnesses was eliminated because the court felt that if a full day had been put in that could have and should have accomplished the purpose. The court offered to reconsider this item if Luckenbach would show he did spend more time than what would amount to a full day. This offer was not accepted by Luckenbach. No explanation in the order is given for why forty hours for briefing and preparation for trial were translated into five days of preparation; presumably the trial court counted eight hours as one full day. Four days of trial claimed by Luckenbach were reduced to three full days of trial. This is not explained in the order but in an affidavit of the clerk of court filed after the date of the order it appears that on the second day of trial on March 17th the court adjourned in the afternoon at 2:43 because of a raging blizzard and the necessity of allowing jurors to start for their homes in the distant parts of the county. The following morning the trial did not commence until 11:30 because one of the jurors was unable to get to the courthouse prior to that time. It is claimed on oral argument that the four days

of trial were the equivalent of three full days of actual trial work.

The record in this case leaves much to be desired. Claims for legal services should be submitted to the court by verified petition explaining the nature and extent of the work and in itemized form showing not only the amount of time spent but also the nature of the work and the problems involved in sufficient detail so that it can be properly appraised and a reasonable fee determined for the services. The facts so stated should be considered *prima facie* evidence, and modifications, allowances, and disallowances of the items made by the court and the reasons therefor should be set forth in writing and an opportunity given to counsel to contest the modifications. Reasonable men may differ over the value of legal services and there is no question of an attorney's integrity involved when a court differs with him as to the necessity or value of services rendered. Such procedure we hope will minimize misunderstanding between counsel and the trial court and reduce the number of appeals to this court.

The trial court had the responsibility of determining the amount of research, investigation, and preparation which was necessary for the adequate defense of the indigent. It believed two and one-half days were not justified in search for and interviewing witnesses at Green Bay and Seymour. Luckenbach having been given the opportunity to support and explain these charges did not do so and, therefore, cannot complain on appeal of the modification. We do not believe it is correct to convert forty hours of preparation into five days at $75 a day. Apparently the county court has set no hourly rate. On the basis of eight hours a day and the day rate used, the hourly rate would be a little more than $9 an hour. It was not fair to counsel engaged in a murder trial extending over four days to count such time as only three full days because the actual court session ended early one afternoon and commenced late the following morning.

This modification assumes a lawyer only works when court is in session. This is no more true than it can be said a trial judge only works when he is on the bench. The *per diem* for trial work contemplates not only the time spent while the court is sitting but also the necessary preparation and ratiocination outside the in-court time. *State v. Kenney* (1964), 24 Wis. (2d) 172, 128 N. W. (2d) 450.

In *Conway v. Sauk County* (1963), 19 Wis. (2d) 599, 120 N. W. (2d) 671, we pointed out the trial court had the duty of not only determining what services were reasonably necessary to constitute an adequate defense but also what money value was to be placed upon the services so rendered. In respect to the latter, sec. 256.49, Stats., provides the compensation of a court-appointed attorney "shall be such as is customarily charged by attorneys in this state for comparable services." Comparable services we conclude mean not what is customarily charged a private client but such charge discounted by some factor because of the certainty of payment from the public treasury. We pointed out in *Conway* the minimum-fee schedule was evidence relevant to the question of a reasonable charge for such services in this state but the court was not bound to apply the rates. Again in *State v. Kenney, supra,* we held sec. 256.49 did not require this court to apply the full minimum bar rates to services rendered by court-appointed counsel and in that case we used as a standard approximately two thirds of the minimum bar rates as a going rate for the representation of indigents in Rock county. This court also considers that percentage of bar rates as a guideline in determining compensation to counsel appointed by this court for indigents.

We cannot approve the rates used by the trial court as being compensation which is customarily charged by attorneys or paid to them in this state for comparable services. We think the rates are too low. The value of legal services is not a personal matter with the trial

judge. While we have stated a trial court as a trier of the facts need not take expert testimony as to the reasonable value of legal services because such is within his expert knowledge, we also said that on the appeal of such an issue this court likewise had expert knowledge of the reasonable value of legal services and consequently such cases were exceptions to the great-weight-and-clear-preponderance-of-the-evidence rule. *Will of Gudde* (1951), 260 Wis. 79, 49 N. W. (2d) 906. This exception was followed in *Touchett v. E Z Paintr Corp.* (1961), 14 Wis. (2d) 479, 111 N. W. (2d) 419, and more recently in *Giffen v. Tigerton Lumber Co.* (1965), 26 Wis. (2d) 327, 132 N. W. (2d) 572. These cases involved the issue as it related to an attorney and his private client.

The general rule was held inapplicable to cases involving a court-appointed counsel for an indigent in *Conway v. Sauk County, supra,* because in court-appointed-counsel cases the amount of compensation depends upon sec. 256.49, Stats., and because of that we stated in *Conway* the test on review of such question was whether "the record demonstrates that the allowance made by the court was clearly unreasonable." In determining what is unreasonable this court must necessarily rely on its expert knowledge of the necessity and the value of legal services, and unless the trial court's determination falls within the range of such determined reasonableness, it must be held to be clearly unreasonable.

We believe the amount allowed by the trial court to be clearly unreasonable. Considering the nature and extent of the services necessarily rendered and the other factors involved and using approximately two thirds of the State Bar minimum fee as a rate, we think a fair and reasonable sum for the services is $1,250, plus $11.20 for travel expenses.

*By the Court.*—The order is modified so as to direct payment of $1,250, plus $11.20 disbursements, to Orville S. Luckenbach and, as so modified, is affirmed.