STATE, Plaintiff, v. SIDNEY, Defendant.
ATTWELL, Appellant, v. MILWAUKEE COUNTY, Respondent.

*No. State 108. Submitted under sec. (Rule) 251.54 January 7, 1975.
—Decided February 4, 1975.*
(Also reported in 225 N. W. 2d 438.)

The cause was submitted for the defendant and for the intervenor-appellant pro se on the brief of *Joseph J. Attwell* of Milwaukee; and for the respondent Milwaukee County on the brief of *Robert P. Russell,* corporation counsel, and *Gerald G. Page,* assistant corporation counsel.

WILKIE, C. J.  This appeal involves compensation to be paid to appointed counsel for services performed while representing indigent criminal defendants in trial court.

On September 7, 1972, Brenda Sidney plead guilty to disorderly conduct in violation of sec. 947.01, Stats., following an initial charge of prostitution in violation of sec. 944.30 (1). She was placed on probation for one year and subsequently was charged with violation of the terms of probation in failing to report to probation authorities. She was arrested and imprisoned on May 18, 1973, for the probation violation. On June 8, 1973, appellant Joseph J. Attwell was appointed to represent her in probation revocation proceedings. (His petition to the trial court for his fees states he was not notified of the appointment until June 27, 1973.) On June 28th Attwell moved the county court of Milwaukee county, Judge KESSLER presiding, for an order releasing Sidney from custody. The motion was denied. Subsequently, Attwell filed a writ of habeas corpus in Milwaukee county circuit court, Judge SERAPHIM presiding. The writ alleged a number of violations of Sidney's constitutional rights and in particular challenged the procedure whereby she had been placed in jail for the alleged probation violation without any court hearing on the matter. The writ was granted and Sidney was released from custody on July 6, 1973, but not from probation. Following a motion for release from probation and a further county court hearing on July 31st before Judge KESSLER, the court refused to release her from probation. However, she remained free from incarceration and apparently no probation revocation hearing was held thereafter.

On August 9, 1973, Attwell presented the county court with an eight-page sworn petition for fees. The petition contained an itemized list of noncourt hours, court appearances, and expenses, accompanied by a detailed de-

scription of the type of services performed as to each item. A summary of this request is as follows:

| Item | Time | Rate | Total |
|---|---|---|---|
| Research, investigation, drafting of pleadings, client interviews, miscellaneous: | 22 hrs. | $35/hr. | $ 770.00 |
| Court appearances (5): | 2½+ days | varied | 800.00 |
| Expenses: | | | 7.94 |
| Total: | | | $1577.94 |

In an order entered August 28, 1973, the trial court allowed Attwell $310. This order may be summarized as follows:

| Item | Time | Rate | Total |
|---|---|---|---|
| Preparation: | 5 half days | $20 ½ day | $ 100.00 |
| Trial: | 6 half days | $35 ½ day | 210.00 |
| Expenses: | | | ——— |
| Total: | | | $ 310.00 |

The county court held that Attwell waived any claim to expenses, although the court did not spell out any reason for that waiver. However, on appeal Attwell only asks for $1,570, apparently abandoning any claim to expenses.

The only question on this appeal is whether the trial court erred in allowing Attwell's fee request only to the extent of $310. It did. We therefore remand for

further consideration by the trial court because it is apparent to us that a full consideration was not given to a determination of the number of hours put in by counsel or of the fees on the basis of the proper rate of compensation.

The payment of attorneys' fees for counsel appointed to represent an indigent criminal defendant is controlled, in part, by the provisions of sec. 967.06, Stats., and partially by the prior decisions of this court.

Sec. 967.06, Stats., provides in part:

"(1) Counsel appointed to represent indigent defendants shall be compensated for services commencing with the time of their appointment.

"(2) The judge or court under this section shall fix the amount of compensation for counsel appointed hereunder, *which shall be such as is customarily charged by attorneys of this state for comparable service,* and shall provide for the repayment of actual disbursements for necessary travel and other expense, automobile travel to be compensated at not over 8 cents a mile. The certificate of the clerk shall be sufficient warrant to the county treasurer to make such payment." (Emphasis supplied.) [1]

In the 1965 case of *State v. DeKeyser* [2] this court held this emphasized language did not require remuneration entirely comparable to what the attorney might receive from a private client:

". . . Comparable services we conclude mean not what is customarily charged a private client but such charge

---

[1] Sub. (2) governs payment of fees for representation in trial courts. Sub. (3)—which is not involved in the instant case—governs payment of services rendered on appeal. Rather than requiring payment of what "is customarily charged by attorneys of this state for comparable service" as under sub. (2), sub. (3) simply provides in part: "Upon the certificate of the clerk of the supreme court the county treasurer shall pay the attorney such sum for compensation and expenses as the supreme court allows."

[2] (1965), 29 Wis. 2d 132, 138, 138 N. W. 2d 129. *See State v. Kenney* (1964), 24 Wis. 2d 172, 176, 128 N. W. 2d 450; *Conway v. Sauk County* (1963), 19 Wis. 2d 599, 606, 120 N. W. 2d 671.

discounted by some factor because of the certainty of payment from the public treasury. We pointed out in *Conway* the minimum-fee schedule was evidence relevant to the question of a reasonable charge for such services in this state but the court was not bound to apply the rates. Again in *State v. Kenney, supra,* we held sec. 256.49 did not require this court to apply the full minimum bar rates to services rendered by court-appointed counsel and in that case we used as a standard approximately two thirds of the minimum bar rates as a going rate for the representation of indigents in Rock county. This court also considers that percentage of bar rates as a guideline in determining compensation to counsel appointed by this court for indigents."

The court also said in *DeKeyser* that the trial judge has the responsibility of determining what services were reasonably necessary as well as fixing the rate of compensation. In making these determinations, the trial court should consider a number of factors. As stated in *Touchett v. E Z Paintr Corp.*,[3] a case involving a fees dispute between an attorney and a private client:

" ' "The things to be taken into consideration in determining the compensation to be recovered by an attorney are the amount and character of the services rendered, the labor, the time, and trouble involved, the character and importance of the litigation, the amount of money or value of the property affected, the professional skill and experience called for, and the standing of the attorney in his profession; to which may be added the general ability of the client to pay and the pecuniary benefit derived from the services." ' "

However, the trial court's findings and award of compensation are not necessarily given substantial weight by this court on appeal. As part of the exercise of its supervisory control of the practice of law, and because the members of the court have expert knowledge as to the reasonable value of legal services, the court will independently review questions raised on appeal concerning

---

[3] (1961), 14 Wis. 2d 479, 488, 111 N. W. 2d 419.

attorneys' fees.[4] Nevertheless, despite this independent review the court indicated in *DeKeyser* that the matter should be fully considered in the trial court:

". . . Claims for legal services should be submitted to the court by verified petition explaining the nature and extent of the work and in itemized form showing not only the amount of time spent but also the nature of the work and the problems involved in sufficient detail so that it can be properly appraised and a reasonable fee determined for the services. The facts so stated should be considered *prima facie* evidence, and modifications, allowances, and disallowances of the items made by the court and the reasons therefor should be set forth in writing and an opportunity given to counsel to contest the modifications. Reasonable men may differ over the value of legal services and there is no question of an attorney's integrity involved when a court differs with him as to the necessity or value of services rendered. Such procedure we hope will minimize misunderstanding between counsel and the trial court and reduce the number of appeals to this court." [5]

In the instant case, Attorney Attwell submitted a detailed petition meeting this standard and the trial court specified the reason for refusing to award the amount requested—that "the rate customarily allowed in Milwaukee county" was lower than that charged by Attwell. There is no indication in the record, however, that Attwell requested, or was granted, an opportunity to contest the reduction.

Attwell's petition lists 22 hours of out-of-court time. The trial court allowed Attwell five one-half days and presumably this is equivalent to 20 hours. Since there is nothing in the record to indicate a precise explanation for this determination, we are convinced that the

---

[4] *Herro, McAndrews & Porter v. Gerhardt* (1974), 62 Wis. 2d 179, 183, 184, 214 N. W. 2d 401; *Touchett, supra,* page 488.

[5] 29 Wis. 2d at page 137.

determination of work time must be made by the trial court on remand. This is also true of the time allowed for in-court work. The petition states that two and one-half days of court appearances were involved, in addition to two appearances in the trial court for which no duration was specified. The trial court found that Attwell had spent six half, or three full days in court. But we are not satisfied that there was a full enough exploration of this matter in the trial court's deliberations.

Although the trial court here did not express the remuneration allowed in hourly terms, it appears that the hourly charge for out-of-court work was $5 per hour ($100 for two and one-half days, or 20 hours), and $8.75 per hour for in-court time ($210 for three days, or 24 hours).

The matter of the rate of compensation to be paid for such representation of indigent criminal defendants in trial court has been considered by this court in at least three cases: *State v. DeKeyser*,[6] *State v. Kenney*,[7] and *Conway v. Sauk County*.[8] The present rate of compensation allowed by this court is $20 per hour. This is based on a rate of compensation which is measured to be two thirds of the prevailing rate of $30 per hour. It is apparent here that the trial court did not compute Attwell's compensation at this rate, whatever the time evaluation was, and on remand the trial court should apply this rate to the time reasonably considered as necessary for the legal work involved. At the same time the court recognizes that the cost of managing a legal office has increased and that the prevailing average rate now charged by attorneys in this state is $45 per hour. Henceforth, where legal work is performed on behalf of indigent criminal defendants, whether in court or

[6] (1965), 29 Wis. 2d 132, 138 N. W. 2d 129.

[7] (1964), 24 Wis. 2d 172, 128 N. W. 2d 450.

[8] (1963), 19 Wis. 2d 599, 120 N. W. 2d 671.

out of court, the rate of compensation to be paid by the trial courts should be on the basis of $30 per hour for such hours determined by the court to have been reasonably necessary for performance of the services involved. Since all of the work here was performed in the summer of 1973, however, the hourly charge of $20 should be applied by the trial court to its determination of the time reasonably involved.

The supreme court has previously approved as a general policy that all legal work performed for indigent criminal defendants should be at a figure per hour that is generally one-third below the prevailing rate charged for services to nonindigent clients. This is based on the fact of certainty of payment from the public treasury plus the further fact that legal work of this nature is part of the general obligation on the part of all lawyers to see that justice is done in our criminal courts.

We remand the entire case to the trial court for further proceedings in accordance with the proper standards for evaluating and compensating legal work of this nature.

*By the Court.*—Order reversed and cause remanded for further proceedings not inconsistent with this opinion. No costs on this appeal.